### CITY MAGISTRATE'S COURT—NEW YORK,

#### Oct., 1914.

## THE PEOPLE v. LOUIS SIEGEL.

**(1.)**  PUBLIC HACK ORDINANCE—SEC. 10, ART. 111.

Where an unlicensed public hack waited seventeen minutes at Pier with taximeter flag indicating disengaged vehicle but without actual solicitation *held* not to violate Public Hack Ordinance, Sec. 10, Art. 111.

**(2.)**  SAME.

A taxicab without a public hack license has the like use of the public streets as any other vehicle. If the flag's position indicates " vacancy " that circumstance alone would not sustain a conviction under the ordinance.

*Frank L. Polk, Corporation Counsel*, with *Assistant Corporation Counsel George P. Nicholson,* for the People.

*Crane, Woodward, Shonk & Fiero,* for the defendant.

DEUEL, C. M.:

The defendant is on trial for violating section 10, Article III, of the Public Hack Ordinance, in that on August 29, 1914, he operated an unlicensed public hack in the County of New York. At the close of the People's case a motion to acquit was denied. The defendant called witnesses, including himself, and the matter now comes up for decision on briefs carefully prepared and submitted by the respective counsel.

The ordinance was approved June 2, 1913, and since it went into effect prosecutions have been numerous, but the only formal decision cited by either party was People v. Milne (Gen. Ses., June, 1914, 86 Misc. 417). That case involved nothing

but the application of statutory provisions to a proven state of facts. The same is true of the present case. The facts, however, materially differ, hence the decision of Mr. Justice Crain can be but partially helpful here to determine whether or not the conduct of the defendant, in operating his cab on the day in question, converted it into a public hack—" a vehicle plying for hire and which solicits public patronage upon the streets and highways of this city " (sec. 2, Art. I.).

It was a motor vehicle plying for hire on behalf of a company owning a large number of similar vehicles, and was equipped with a taximeter whereby the charge for hire was mechanically calculated.

He drove on that day to Pier 60, White Star Line, remained there seventeen minutes, with the taximeter flag in an upright position, which, besides throwing the mechanical charge calculation out of gear, indicated a disengaged vehicle possibly open to employment. During the waiting time he spoke to no one and no one spoke to him, and then started to leave for the Pennsylvania Station upon orders given by a superior officer of his employer, when the complaining inspector of the Bureau of Licenses served him with the summons in this case. Notwithstanding there was no direct soliciting of business, the situation, the position of the flag and the probability of business from passengers landing from the steamship seemed to bring the case sufficiently within the Milne decision to put the defendant on his defense. That decision in full was not then before the court.

From the evidence submitted by the defendant it would appear that an arrangement had been made between the employer of defendant, the Mason-Seaman Company, and the White Star Line whereby the latter ascertains before a steamer docks how many cabs will be necessary to accommodate the incoming passengers and then telegraphs such information. Upon its receipt by the Mason-Seaman Company it sends the requisite

number of vehicles, which stand outside the inclosed pier until wanted and then move within the inclosure to receive passengers. Thus there is no necessity for soliciting patronage on the streets of the city.

Whether there was any soliciting within the inclosed portion of the pier is purely conjectural; from anything disclosed by the evidence, the steamship company may have acted purely in the interest and for the convenience of its passengers and provided in advance for their city transportation, so that each could step into a cab on the pier and thus be conveniently and surely served. Even soliciting public patronage there could make no difference in the legal result, for private cabs plying for hire in the city are permitted to seek patronage in any way not specifically forbidden by the ordinance; they cannot seek it on the streets and highways of the city, and the inclosed portion of a steamship pier constitutes no part of any street or highway; streets are open to the use of the public; the piers can be used only by permission of and under the rules and regulations of the leasing company.

Again, the position of the Mason-Seaman Company is the same in legal effect as would be the steamship company if, as was the case sometime since as to the Pennsylvania Railroad, it owned and operated the cabs for transportation of the public to and from its vessels. Thus confined, the requirement to obtain a license under this ordinance would not attach. Possessing that right, it could be farmed out free of like liabilities. And it is immaterial where they stand waiting admittance to the pier proper, provided they do not unreasonably block or congest ordinary traffic. In the present instance the seventeen minutes' wait of the defendant was in the place selected by the traffic officers of the city.

But there is still a further legal proposition that must follow a taximeter flag. A taxicab without a public hack license has the like use of the public streets as any other vehicle. If the

flag's position indicates "vacancy," that circumstance alone would not sustain a conviction under the ordinance. In People v. Razaziez (206 N. Y. 249) the court said: " In a criminal case circumstantial evidence to justify the inference of guilt must exclude to a moral certainty every other reasonable hypothesis. Circumstantial evidence in a criminal case is of no value if the circumstances are consistent with either the hypothesis of innocence or the hypothesis of guilt; nor is it enough that the hypothesis of guilt will account for all the facts proven. Much less does it afford a just ground for conviction that unless a verdict of guilty is returned the evidence in the case will leave the crime shrouded in mystery."

Upon the foregoing considerations of the law and the facts, the defendant should be, and accordingly is, acquitted.